May it please the court, my name is Bill Schmidt and I represent Mr. Bucci, the appellant in this case. Appellant has cited examples of prosecutorial misconduct. Namely, Bucci has been convicted by plea of two counts of vehicular manslaughter following the 1994 collision. But the prosecutor not only made an objection that kept the jury from knowing this fact, he then repeatedly argued that Bucci got away with it before, that there were four dead bodies on the highway and that Bucci needed to step up and take responsibility for all his actions. In our briefs we cited both state and federal cases that were similar or analogous, where similar or analogous behavior was found to be misconduct. We also assign here to the prosecutor's argument that sometimes people act in conformity with character and that this was the case with Bucci when he killed two people on Highway 12 in 2006, which mirrored his earlier collision in 1994. Every instance of that misconduct was prejudicial. So prejudicial, we argue, that Bucci was denied his right to a fair trial to due process. You're here, obviously, on federal habeas petition. As I understand it, the California courts found this error, and they found it not to be error, but as it were an error to be non-prejudicial. In light of the facts of this case, which are pretty stark, how can we find that to be a clearly reasonable sliding fact? Well, the district court and the state seem to argue that because there's no state Supreme Court precedent directly on point, meaning that there are no facts exactly the same, that we cannot fairly say that the court's interpretation and application of the rule against prosecutorial misconduct was contrary to or an unreasonable application. I'm asking you a slightly different question. Let's assume this question, prosecutorial misconduct, that we find contrary to the state court that it was, but there's a second prong to the main strickland analysis, and that's prejudice, that the outcome probably would have been different. There's a reasonable probability that the outcome would have been different. And as I read the state court, there are alternative findings there. They find no misconduct, but if not, no strickland prejudice. We review that, I think, under epidepheris. And so my question to you is, is that finding so unreasonable, no prejudice finding, that we could overturn it on federal areas? Well, I think you've brought two issues into one there. One is the prosecutorial misconduct. Okay, assume there was prosecutorial misconduct. Okay. Assume there was. You've also got to demonstrate prejudice. It's not enough that a prosecutor does something wrong during trial in order for us to, in order to get reversal, it has to be prejudicial. And the state courts, I think, I may be wrong, correct me if I'm wrong, didn't think there was, I said strickland before and I shouldn't have said strickland, didn't think there was prejudice.  You've got a separate issue on strickland. That's why I got sidetracked there. So, am I wrong in thinking the state courts didn't find that there was prejudice from the prosecutor's misconduct? I think I'll get to that if I may continue. Sure. The state court, it appears, and the district court seem to argue that there was no precedent. The issue has been raised in a number of contexts, but what's best explained by Justice Kennedy, when he said, the clearly established federal law relevant here is our decision in Darden v. Wainwright, which explained that a prosecutor's improper comments will be held to violate the Constitution if they only, if they so infect the trial with unfairness, as to make the resulting conviction a denial of due process. The rule then is pretty general. And Kennedy recognized that ten years before in Parker, in his concurring opinion in Wright v. West. He said, if the ruling question is one which requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying those applications themselves create a new rule. Counsel, I have a slightly different question about the same issue. The California Court of Appeal held that any objection to the 1994 reference that you're talking about was waived because there was no contemporaneous objection. Is it true that there was no contemporaneous objection and that the only discussion of it came the following day? The only objection were... That's a yes or no question. Yes. Okay. So is that... So isn't that an independent sort of procedural ground upon which the court could have ruled? Not wholly apart from the discussion that Judge Hurwitz is having with you about prejudice? We're asking this court to make the ruling on federal due process that it was so prejudicial as to infect the trial with unfairness. It was completely unfair to Mr. Pucci to allow the prosecution to do several things. Well, as Judge Hurwitz has asked, the state court in the alternative concluded that the prosecutor's comments wouldn't have made any difference given the facts of the case. And I witnessed testimony about, you know, your client's highly reckless driving that caused these deaths. And, you know, we are bound by EBPA, so why is it unreasonable? It's not enough for us to say, well, gee, if we were going to look at this, we might come to a different conclusion. Why was it unreasonable for the state court to say, even if we reach the merits, it just wouldn't have had much of an effect on the jury? Because the misconduct of the juror reached a level that denied Mr. Pucci due process. Well, that's a conclusion, but in order to conclude that it's a denial of due process, there has to be prejudice. I mean, if the misconduct is, you know, making a nasty face at somebody, then, you know, it may be misconduct, but for it to be a due process violation, it has to result in an alteration or probable alteration of the outcome. And that's where we're stuck, I think. The defense was unable to get evidence that Mr. Pucci was convicted into the trial. So let's, can we separate two things here? Maybe this will be helpful. I understand from the state court opinion that there may not have been a contemporaneous objection to what was not objected to on the day it occurred, the introduction of the evidence or the prosecutor's comment in closing it throughout. Right. So there was no objection at closing or throughout the case to what the prosecutor did. Correct. Okay. Now, with respect to that, we then have to find that you haven't waived that as a matter of state law. We could, and the California Court of Appeals seemed to think that you might have. So how can we, as a state law question, not a federal question, can we, how do we get to it? If state law waiver is applied, our argument is that this violation was so egregious that it was a violation of his federal constitutional rights. And let's assume that's correct. Let's assume that it was a violation of his federal constitutional rights, but you failed to preserve the issue for state appeal. If that's the case, aren't you out of federal court? No, because the prosecutor conducted himself in such a way. See, I'm assuming the prosecutor's conduct, for purposes of this question, was outrageous. I'm also assuming it was prejudicial. Let's assume both of those things, and let's assume that, for purposes of my question, that you never appealed to state court about that. You wouldn't be able to bring it up to the federal court, would you? No, we wouldn't. Now, my second question is, given that the Court of Appeals thinks that you didn't preserve the objection in trial sufficiently to allow the appellate court to consider it, aren't we in the same situation? We're talking about a federal due process violation, and we did exhaust that. It was brought out to the California Supreme Court in the petition for review in the original appeal in the case, not the habeas action in the appeal. We did preserve the right for the federal due process issue for prosecutorial misconduct. Okay. Go on. I'm sorry. We're taking you off track, but I was interested in the issue, Judge Graber. Okay. I'm interested in the 404B issue. I'm sorry if you could address that. The Strickland issue? No, the 404B issue as to the admission of the prior acts. Okay. Why should this 1994 incident have come in at all? You did object to its introduction. Why? Well, it was highly prejudicial. It was supposedly admitted to show that the defendant knew it was dangerous to drive while sleeping. The prosecution didn't present any evidence. In fact, the prosecution argued that Mr. Bucci was not sleeping at the time, and the defense didn't present that defense. So the stated reason for bringing in the evidence was a pretext to bring in character evidence and misconduct evidence, if you will, which was the 1994 accident. Did Mr. Bucci state to the police at the time that he may have been asleep? At the time that he did, Mr. Bucci didn't know what had happened. Right, but he did say that at the time. He did say that he may have fallen asleep. Yes, that was his excuse at the time. But later, and this goes to the ineffective assistance of counsel, it was discovered in the civil trial that he didn't cross over a double yellow line. The pass was initially begun over a dashed or broken yellow line. What were the results of the civil trial? A $26 million verdict for the ---- So how can we conclude that only if the criminal jury had only heard the same expert testimony that didn't convince the jury in the civil trial, we would have had a different result in the criminal trial? Your ineffective assistance of counsel claim is that if counsel had only explored this expert testimony, it might have come out differently. Right. But when Mr. Bucci presented that expert testimony in the civil trial, he lost. Well, he didn't lose. It was a 35-65 split in the responsibility. Caltrans was found 35 percent liable. He never said that Mr. Bucci was not guilty. It's what was he guilty of. Was he guilty of involuntary manslaughter or second-degree implied malice murder? Certainly he was guilty of some sort of homicide. But if the jury had heard that this road was badly designed, there were no shoulders, the sight distance was extremely deficient for a passing area. And there had been over 100 similar accidents over the years, many of them head-on in the same types of accidents and deaths. If they had heard that evidence, all we had to defeat or the defense would have had to defeat was the implied malice. So you're contentious with it, but he would have been convicted of lesser offense. Exactly. Not that he was not guilty, but that it would have been involuntary manslaughter instead of implied malice murder. Judge, did you have another question? My problem with that is that you seem to be cherry-picking elements of the different defenses. And ignoring the inconsistency of those defenses. In other words, at some time we have to say, well, what happened? Instead, he's in retrospect going back in and picking and choosing among defenses to say this might have been a better defense. I agree. You have to cherry-pick a defense at the beginning. For the defense counsel to cherry-pick the proper defense, a proper investigation, a complete investigation, not a dependence on the prosecution's investigation, had to be made. Depends on what his client told him. Well, his client told him. That's another point. His client told him, I don't remember. I might have fallen asleep. I don't remember what happened. So all the defense attorney did was settle on a defense that fit that instead of doing an investigation into what happened and how it happened. It was mathematically proven, and all of the experts at the civil trial agreed, that it was not possible for him to have begun the pass illegally. Counselor, your time has expired. But we'll give you a minute for a rebuttal when the time comes. Thank you, Erin. Thank you. May it please the Court, Dorian Shadow, in appearing for respondent and appellant. I'd just like to make a few brief comments. Addressing claim number one, which is a petitioner's argument that the Pyramus conduct evidence was unlawfully admitted. That claim has been procedurally defaulted. The state appellate court imposed a procedural bar based on the appellant's or petitioner's failure to make a contemporaneous objection at trial. That's the question I was asking before, so see if you can enlighten me. Was the failure to make a contemporaneous objection to the introduction of the 1994 accident or was it to the prosecutor's statement? It was the prosecutor's statement. Okay. So on the 404B issue, it wasn't preserved? Yes, Your Honor. Okay. I thought you just said the opposite. Yeah, yeah. Oh, I apologize. I was going to ask that too. I apologize. Allow me to clarify. The admissibility of the Pyramus conduct evidence was litigated prior to trial in an inclinating motion. The specific misconduct argument which petitioner is making referring to prosecutor's statements during closing argument, that was a prosecutorial misconduct issue which would have required a separate and independent objection at the time of trial in order to preserve it. The state appellate court found that petitioner's failure to make a contemporaneous objection constituted a waiver, and that is a separate independent state law ground. And did the state appellate court, if I'm not mistaken, then go on to address the merits of it? It did, of course, Your Honor, and that's correct. But in alternative findings made on the merits, it does not initiate the initial imposition of a state law waiver. Can we address the merits for a second? Because this is the part of this case I find most disturbing. The prosecutor obtains a ruling from the court that the fact that he's been convicted of a misdemeanor can't be introduced into evidence, and then later says to the jury he got away with it. Had he objected, I assume the judge would have admonished the prosecutor, and perhaps allowed, you know, I don't know how the judge would have remedied it, but it strikes me as misconduct. Can you defend that at all? Absolutely, Your Honor. In context, in context, the prosecutor's argument was not an invitation to punish a defendant. No, but it was a misstatement of the facts, was it not? He did not get away with the first incident. He wasn't punished, perhaps, as much as the prosecutor thought he should have been. But he received a criminal conviction for the first one, right? That's absolutely correct, Your Honor. That's absolutely correct. When one receives a criminal conviction, one does not get away with the underlying conduct, does one? The problem with that analysis, Your Honor, if I might, is that in context, the prosecutor's statement was not a remark that the petitioner had gotten away with committing murder or manslaughter. It was a comment on the fact that his statement at the time of the accident, I must have dozed off, that that had been a successful defense. Well, that's not the reason. But the problem with that argument is it had not been successful. He had been convicted of something, notwithstanding that defense. So the correct statement was he tried this once before and didn't get away with it. Isn't that correct? I believe that's incorrect, Your Honor, because what the prosecutor was trying to do was analyze the specific statement at the time of the accident, which he made to the EMT. Okay, when did he get away with it before? He made that assertion in 1994. Did he get away with it? He did. That was the assertion he made, and it was accepted, believed, and credited. How do you know that? We know that because he was convicted of a misdemeanor at the time. He wasn't convicted of vague domestic violence. Wow, you're a great lawyer, but I have trouble thinking that this statement is even close to factually accurate. It may have been waived. There may have been no prejudice, but I think it's misconduct, at least personally. Yeah, I guess I have the observation that the IPA standard of review does a lot of work in this case. But I would like to have you comment, if you would, on the question of the accident reconstruction claim, the Strickland claim. Yes, of course, Your Honor. Probably the most important takeaway from the subsequent reports of the accident reconstruction experts is that they do absolutely nothing to help, aid, or amend the defendant's claim that he was innocent. They do absolutely nothing. But that's not what he's arguing. He's arguing that had his accident reconstruction testimony been given in the criminal trial, there was a high probability that he would have been convicted of a lesser offense. And that still could be ineffective assistance if somebody is convicted of murder, but you are convinced that they would only have been convicted of manslaughter. That's a big difference in potential sentence and so forth and so on. So I don't think his claim is that he would have been found innocent. So could you respond to the argument that he's actually making about lesser included? Of course, Your Honor. And allow me to rephrase my statement then, which is that the testimony of accident reconstruction experts could have done absolutely nothing to contribute towards a finding of a lesser included offense of involuntary manslaughter. The undisputed facts show that the defendant was traveling uphill at night in a no-passing zone on a two-lane highway past a line of eastward-bound traffic towards oncoming traffic, which he could not see. He was speeding and plowed directly head-on into a small vehicle, which he never saw and could never have seen. So what's the mens rea required for the crime for which Mr. Briggi was convicted? Implied malice, Your Honor. And what's the mens re required for the lesser included offense of involuntary manslaughter? Something that he would have done. Recklessness. Recklessness, yes. Okay, so why wouldn't this testimony have demonstrated that he was merely reckless rather than having a requisite implied malice? I'm trying to find implied malice under California law. Well, as a matter of basic definitions, as a matter of law, this evidence would absolutely have shown he acted recklessly. There's no doubt about that. Sure, but recklessly would be enough to get him to the lower state court, would it not? Of course, Your Honor. So why wasn't it? So his argument is that the jury only heard this. There's a reasonable probability that they would have depicted the only lesser offense of involuntary manslaughter. You admit that this is testimony that is probative of involuntary manslaughter. Why wasn't it? So why should counsel have explored this defense? Because that evidence could never have shown that the defendant committed nothing greater than involuntary manslaughter. The only difference, as I understand it, between what the accident reconstructionist said and all the other testimony was whether there was a dotted line at the place where the initial crossover into the other lane took place. But it doesn't seem to me, at least as I understand it, that the accident reconstruction testimony would have altered anything else. And I guess I would have ‑‑ it sounds like your argument is that that small difference really wouldn't have made a difference. That's absolutely correct, Your Honor. Is there anything else I'm missing that would have been different? Understanding the mechanisms of the accident, besides whether there was a broken line at the very beginning when the initial move was made. Is there anything else that's different? Different from? From the evidence that came out at the criminal trial. Is there anything that's different? That evidence didn't come out at the criminal trial. Is there? The accident reconstructionist didn't testify at the criminal trial. Right. Had he testified, the jury would have heard what Judge Graber just said. That there was a dotted line at the beginning when he began the passing, even though it became a solid line later during the passing. That's correct, Your Honor. Okay. Is there anything else that the accident reconstructionist would have testified to that was different from what the jury already heard in the criminal trial? No, Your Honor. Okay. Because, in fact, the accident reconstruction experts relied mostly on the testimony of Jerry Fender and Kim Johnson. It is that criminal testimony trial which formed the basis of the accident reconstruction reports. So there's nothing that the accident reconstruction experts could have said that would have contradicted or initiated the testimony of the criminal trial witnesses, their testimony or indeed. So the hail and the speeding and the night and all the other factors are identical? Yes, absolutely, Your Honor. Those facts remain uncontroverted. So your argument is that there's not a reasonable probability that it would have changed the verdict? Or that the state court reasonably so concluded? Absolutely, Your Honor. Yes, that's precisely correct, Your Honor. And, of course, the gravamen of defense is implied malice. I mean, the finding of guilt doesn't turn on the exact location where the passing of the verdict can. Well, but I suppose it could. It could be that I negligibly sent and set out and thereafter it was impossible for me to get back. I'm not sure that's a good defense, but it's not contradicted by these other evidence. Well, our argument, Your Honor, is that under all the circumstances taken together, they demonstrate an abandonment of malice, an abandonment. Oh, sure. At heart. Nobody's arguing about the sufficiency of the evidence to support the verdict. Everybody agrees as to that. The question is whether or not the verdict might have been different in some way in the jury or in this testimony. I think you've argued that. In that case, if there are no further questions, I am prepared to submit. All right. Don't believe there are. Thank you. Mr. Schmidt, you have one minute. I think Judge Hurwitz hit the nail on the head when he said that the defense or it could have changed the outcome of the trial in that when he began the pass, he didn't have the one disregard for human life when he began. He got out into the lane and got caught there. But no matter how long it was, whether it was one second in the legal passing zone or ten seconds when he began the pass, he did not have implied malice. That is the theory that we believe could have been presented. In addition, had the evidence of the investigator or had a proper investigation been done as it was for the civil trial, it would have been foundational for exculpatory evidence to come in, such as impeachment of the witnesses who said he went over a double yellow line. That just mathematically could not have happened based on the testimony of the experts. Thank you, counsel. Your time has expired. Thank you. We appreciate the arguments of both counsel and the case just argued is submitted.
judges: Graber, Hurwitz, Foote